UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMERICAN GUARANTEE & | ) | 3:21-CV-01398 (KAD) |
| LIABILITY INSURANCE COMPANY | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 51 ROSES MILL LLC | ) | SEPTEMBER 13, 2022 |
| *Defendant.* | ) | |

**MEMORANDUM OF DECISION**
**RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, ECF Nos. 21 & 28**

Kari A. Dooley, United States District Judge:

On September 14, 2020, a fire destroyed a building located at 51 Roses Mill Road, Milford, Connecticut ("the Property"). At the time of the fire, the Property was owned by Bridge33 Capital LLC ("Bridge33"), insured by Plaintiff American Guarantee & Liability Insurance Company ("American Guarantee"), and under contract for sale to Defendant 51 Roses Mill LLC ("51 Roses"). American Guarantee seeks a declaratory judgment that Bridge33's assignment of its insurance claim to 51 Roses following the fire was invalid or that, if the assignment was valid, the amount that 51 Roses may recover under the policy is the actual cash value of the lost Property and does not include any claim to replacement cost value. 51 Roses brings counterclaims for breach of contract and bad faith and seeks a declaratory judgment that it is entitled to replacement cost value under the policy.

Pending before the Court are cross motions for summary judgment, with 51 Roses seeking a decision on an expedited basis.[1] For the reasons set forth below, 51 Roses' motion for summary

---

[1] In seeking an expedited adjudication, 51 Roses asserted that the issue was straightforward and readily adjudicated in 51 Roses' favor. Upon review of the submissions, a plethora of factual issues were immediately manifest, and the outcome of these motions was revealed as anything but obvious.

judgment is GRANTED in part, and American Guarantee's motion for summary judgment is DENIED.

**Standard of Review**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id.* at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal

quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Where, however, the case turns on a question of law, as to which the facts are not in dispute, summary judgment is appropriate. *See Anderson*, 477 U.S. at 247–48.

**Undisputed Facts[2]**

American Guarantee issued an insurance policy, policy number ERP0239308-02, effective April 25, 2020, to April 25, 2021 (the "Policy"), to Bridge33. Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s L.R.") ¶ 1, ECF No. 28-2. The Policy covered multiple properties, including the property

---

[2] As noted by the Court at oral argument, there are any number of facts in dispute in terms of the transaction among 51 Roses, Bridge33, and American Guarantee. For example, the parties dispute the nature of the communications with American Guarantee and the extent to which American Guarantee was aware of the sale and the purported assignment. The parties agree, however, that the Court can and should decide the legal question regarding the validity and scope of the assignment and that there are no facts in dispute as to that question. Therefore, only the facts relevant to this question are set forth herein.

located at 51 Roses Mill Road in Milford, Connecticut (the "Property"). Def.'s Local Rule 56(a)(2) Statement ("Def.'s L.R.") ¶ 2, ECF No. 21-8.

When a loss at a covered property occurs, the Policy states in relevant parts:

> 6.22.01  The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site . . .
>
> 6.22.02  If there is direct physical loss of or damage to Covered Property for which repair, rebuilding or replacement has not started within two (2) years from the date of direct physical loss or damage, the Company will not be liable for more than the actual cash value of the property destroyed.

Pl.'s L.R. Ex. A, ¶ 6.22.01–02. The Policy also contains an anti-assignment provision, which provides:

> 6.21   TRANSFER OF RIGHTS AND DUTIES
>
> The Insured rights and duties under this Policy may not be transferred without the Company giving written consent.

*Id.* ¶ 6.21.

On June 16, 2020, 51 Roses entered into a Purchase and Sales Agreement (the "Sales Agreement") with Bridge33 to purchase the Property. Def.'s L.R. ¶ 5. The Sales Agreement provided that, in the event of damage or loss to the Property, 51 Roses could either terminate the Sales Agreement or continue with the purchase and receive all the insurance proceeds payable to Bridge33 on account of the loss. *Id.* ¶ 8; Pl.'s L.R. Ex. D. On September 14, 2020, while the sale of the Property was still under contract, a fire completely destroyed the structures on the Property. Def.'s L.R. ¶ 7. Nevertheless, 51 Roses elected to continue with the purchase of the Property for

$1,000,000. *Id.* ¶¶ 9, 11. The closing occurred on September 30, 2020. *Id.* ¶ 11. On October 1, 2020, Bridge33 and 51 Roses executed a Post-Closing Agreement memorializing 51 Roses' election to proceed with the closing and to be assigned any insurance proceeds arising out of the loss. *See* Pl.'s L.R. ¶ 10, Ex. F. In May 2021, Bridge33 and 51 Roses executed another Assignment Agreement purporting to assign "any insurance claim or insurance proceeds payable to [Bridge33]" under the American Guarantee policy. *Id.* ¶ 14, Ex. BB at 2.

**Discussion**

Plaintiff American Guarantee filed its two-count Complaint on October 21, 2021, seeking declarations that (1) "the assignment of the Policy to 51 Roses was invalid" and "because the assignment of the Policy to 51 Roses was invalid, 51 Roses is not entitled to any proceeds under the Policy," and (2) "assuming a valid assignment, [actual cash value] is the appropriate measure for valuing the claim." Compl. ¶¶ 29–30, 40, ECF No. 1. While American Guarantee now seeks summary judgment "on its Complaint," the position it advances in its motion for summary judgment does not dovetail with its requested relief. For example, American Guarantee now concedes that the assignment of the right to receive actual cash value of the property was valid. Pl.'s Cross-Mot. for Summ. J. 16, ECF No. 28-1. However, American Guarantee argues that because the right to replacement cost value had not accrued at the time of the assignment, Bridge33 could not assign the right to recover those proceeds without American Guarantee's consent, which it did not give. *Id.* at 17, 33.

51 Roses' position has also shifted throughout the briefing. 51 Roses asserts three counterclaims: (1) Breach of Contract; (2) Bad Faith; and (3) a Declaratory Judgment that (a) "Section 6.22.01 the Valuation portion of the Policy provides the basis of adjustment on a 'replacement cost basis . . . (without deduction for depreciation);'" (b) "given [American

5

Guarantee's] refusal to acknowledge the replacement cost provisions of its Policy, it is trying to prevent 51 Roses from rebuilding and as such, [American Guarantee] has waived the right to pay anything other than replacement cost damages;" and (c) "upon the replacement of the building [American Guarantee] would be obligated to pay 51 Roses replacement cost damages." Def.'s Countercl. ¶¶ 34–36, ECF No. 12. Although by way of affirmative defenses 51 Roses asserts that "[t]he validity of an assignment is not a controversy subject to a declaratory judgment action," Def.'s Affirmative Defenses as to Count 1 ¶ 1, ECF No. 12, in seeking summary judgment 51 Roses "requests this Court declare the assignment is valid, the measure of loss is replacement cost, and that in any event upon the rebuilding of the structure, replacement cost damages would be due." Def.'s Mot. Summ. J. 3, ECF No. 21. And although the request that the Court declare the assignment valid is essentially the reverse of American Guarantee's requested relief, such relief is not sought in the Counterclaim.

      Despite the shifting posture of the cross motions, counsel for 51 Roses represented at oral argument that the cross motions for summary judgment could be resolved without reference to any disputed facts. Counsel for American Guarantee, despite conceding that the assignment of proceeds stemming from the actual cash value provision was valid, was more circumspect as to the scope of the ruling the Court can enter without resolving factual disputes. Nevertheless, Counsel for American Guarantee also indicated that whether 51 Roses had received a valid assignment of the right to seek replacement cost value could be decided on the undisputed record. The Court agrees that this question can be answered on the present record and proceeds accordingly.

*Legal Discussion*

American Guarantee maintains that under Connecticut law, a claim for policy proceeds is only assignable after the loss occurs ***and*** after the claim accrues, which American Guarantee argues can only happen after the insured has satisfied all of the conditions precedent to receiving proceeds under the policy. Here, American Guarantee argues that no assignment of the right to receive replacement cost value occurred because, at the time of assignment, Bridge33 had not satisfied the condition precedent of rebuilding the destroyed structure within two years and American Guarantee had not consented to any such assignment. 51 Roses, on the other hand, asserts that once the loss occurred, any and all insurance proceeds arising from that loss that were contemplated by the Policy became assignable regardless of the existence of any conditions precedent to receiving those proceeds. The Court agrees with 51 Roses.

"The parties to a contract can include express language to limit assignment and courts generally uphold these contractual antiassignment clauses." *See Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 268 (2000). In insurance contracts, "[p]olicies containing a non-assignment clause are generally interpreted as prohibiting the assignment of the policy itself." *A & R Enterprises, LLC v. Sentinel Ins. Co.*, No. HHDCV166068953, 2017 WL 3080789, at *4 (Conn. Super. Ct. June 13, 2017). However, "Connecticut follows the clear majority rule that such provisions do not bar assignment of an insured's claim after the loss that is the subject of the claim has occurred." *Rising Star Roofing, LLC v. Liberty Mut. Ins. Co.*, No. HHD-CV-21-6148302-S, 2022 WL 1154520, at *2 (Conn. Super. Ct. Apr. 8, 2022) (citing cases); *see also* Steven Plitt et al., 2 *Couch on Insurance* § 34:2 (3rd ed. 2022) ("[A] provision in a policy of insurance which prohibits its assignment except with the consent of the insurer does not apply to prevent assignment of claim or interest in the insurance money then due after loss."). "The idea behind the majority rule is that,

7

once the insured-against loss has occurred, the policy-holder essentially is transferring a cause of action rather than a particular risk profile." *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 171 (2d Cir. 2006) (considering New York law); *see also SR Inter. Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 375 F. Supp. 2d 238, 249 (S.D.N.Y. 2005) (recognizing the "majority rule" that an insurance claim for lost rental payments, a loss which was "fixed or easily ascertained," as opposed to "speculative," could be assigned to a third-party). Policies covering property damage, such as "straight fire polic[ies]," generally fall into the category of policies for which the loss is fixed or easily ascertained as soon as it occurs. *See SR Inter. Bus. Ins. Co.*, 375 F. Supp. 2d at 248; *see also Antal's Rest., Inc. v. Lumberman's Mut. Cas. Co.*, 680 A.2d 1386, 1388–89, 1388 n.1 (D.C. 1996) (citing cases discussing fire insurance contracts and the ability of the insured to assign a claim under such a policy).

      Here, the Policy clearly attempts to limit assignment, providing, "[t]he Insured rights and duties under this Policy may not be transferred without the Company giving written consent." Pl.'s L.R. Ex. A ¶ 6.21. However, this limitation is ineffective to the extent that it attempts to bar the post-loss assignment of claims arising from the September 14, 2020 fire. Both parties agree that Bridge33's assignment of the right to receive actual cost value to 51 Roses was valid. However, the parties dispute the validity of the assignment of the right to receive replacement cost value, given language in the Policy providing, "[i]f there is direct physical loss of or damage to Covered Property for which repair, rebuilding or replacement has not started within two (2) years from the date of direct physical loss or damage, the Company will not be liable for more than the actual cash value of the property destroyed." *Id.* ¶ 6.22.02. At issue here is the impact of this contingent Policy language on the assignability of the right to replacement cost benefits.

Similar to this case is *Conrad Brothers v. John Deere Ins. Co.*, in which a property owner executed a mortgage in favor of the plaintiff Conrad Brothers to secure a $300,000 promissory note. 640 N.W.2d 231, 234 (Iowa 2001). The terms of the mortgage required the owner to maintain insurance that provided replacement cost coverage on the buildings located on the property. *Id.* In the event of a default on the note, the property owner agreed that Conrad Brothers could immediately file a deed in lieu of foreclosure. *Id.* The mortgage further provided that the filing of the deed would result in the assignment of the property owner's rights to any insurance proceeds. *Id.* The Defendant John Deere Insurance Company ("John Deere") issued a policy insuring the buildings against windstorm loss. *Id.* The policy permitted claims for either actual cash value or replacement cost value, but imposed several conditions on a claim for replacement costs. *Id.* One such condition was that the insured replace or repair the damaged property within a reasonable time after the loss or damage. *Id.* The policy also contained an anti-assignment provision. *Id.* Thereafter, the property owner shuttered his business at the property, a windstorm caused extensive damage to one building and destroyed the others, the property owner defaulted on the note, and Conrad Brothers filed a deed in lieu of foreclosure. *Id.* at 234–35. John Deere paid the actual cash value of the loss, after which Conrad Brothers made a claim for the replacement costs from John Deere. *Id.* at 235. John Deere contested the validity of the assignment as having been made without its consent, and alternatively argued that Conrad Brothers had not repaired the buildings, a prerequisite to receiving replacement costs.[3] *Id.*

The Iowa Supreme Court held that the post-loss assignment of the insurance policy was valid and that the assignee could rightfully pursue replacement cost value in excess of actual cash value even though the insurer did not consent to the assignment and the repairs did not occur prior

---

[3] The factual question of compliance or reason to excuse compliance as was at issue in *Conrad Brothers* is not at issue here.

to the assignment. *Id.* at 238. "As assignee, Conrad Bros. stepped into [the property owner's] shoes. The assignment vested in Conrad Bros. all of [the property owner's] rights to insurance proceeds. At the same time, it made Conrad Bros. responsible for proving compliance with the policy terms." *Id.* (citations omitted). The court reasoned that, while an "assignee may present a greater risk of loss to the insurer than the original insured . . . . the need to protect the insurer no longer exists after the insured sustains the loss because the liability of the insurer is essentially fixed." *Id.* at 237. After the loss occurred, the court reasoned, the transfer is more like the transfer of a chose in action under the policy rather than a transfer of the policy itself. *Id.* at 237–38. Put differently, "[at that] point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed." *Id.* at 238.

Notwithstanding the clear import of this authority to the instant case, American Guarantee asserts that, although Bridge33's claim to the actual cash value of the Property accrued when the loss occurred, any claim to replacement cost value did not accrue because Bridge33 did not rebuild or replace the Property, which it alleges was a condition precedent to receiving replacement cost value.[4] Therefore, American Guarantee asserts that any assignment of the right to receive replacement cost value was invalid because the right to make a claim for that amount had not yet accrued. In advancing this argument, American Guarantee primarily relies on *Giglio v. Am. Econ. Ins. Co.* for the proposition that anti-assignment clauses are only unenforceable after the loss has occurred **and** the claim has accrued. *See* No. CV020282069, 2005 WL 1155148, at *6 (Conn.

---

[4] 51 Roses appears to question, although never explicitly contests, whether the Policy language requiring rebuilding within two years constitutes a condition precedent to the receipt of replacement cost benefits. *See* Def.'s Mem. in Opp'n at 26, ECF No. 21-1. While the Court's decision in this case is not impacted by the classification of the contingent Policy language, the Policy language may plausibly be read as a condition subsequent rather than a condition precedent, a finding which would further rebut American Guarantee's contention that the claim for replacement cost value had not accrued as of the date of the assignment. *See* Steven Plitt et al., 6 *Couch on Insurance* § 81:19 (3rd ed. 2022) ("Clauses which provide that . . . the insurer [is] relieved wholly or partially from liability upon the happening of some event, or the doing or omission to do some act, are not conditions precedent but conditions subsequent . . . .").

Super. Ct. Apr. 26, 2005) (citing 6B-182 *Appleman on Insurance* § 4269 (1st ed.)).

*Giglio,* the only case applying Connecticut law cited by American Guarantee, cannot fairly be read for this proposition. The language on which American Guarantee relies appears in the court's summary of one party's arguments in the case—and in a quoting parenthetical, at that— and not in the court's own discussion of the applicable law:

> CIGA in opposition argues that while generally, insurance policies cannot be assigned without the consent of the insurer, this rule does not apply to an assignment after a loss has occurred. See. 3 Couch on Insurance § 35.7 (3d ed.1999) (noting anti-assignment clauses do not prohibit assignments after a loss has occurred); see also, 6B-182 Appleman on Insurance § 4269 (1st ed.) ("After a loss has occurred **and rights under the policy have accrued**, an assignment may be made without the consent of an insurer.")

*Id.* (emphasis added). Furthermore, the court in *Giglio* did not discuss the question of *when* a claim accrues, or the effect that an unfulfilled contingency may have on the accrual of a claim. Thus, *Giglio* does not help American Guarantee's cause.[5]

Finally, American Guarantee does not cite, and the Court has been unable to locate, any case in which an assignment was invalidated because the insured failed to meet any post-loss contingencies or conditions prior to the assignment. *Cf. Rising Star Roofing, LLC*, 2022 WL 1154520, at *3 (finding no authority for the proposition that "the rule permitting post-loss assignment applies only where there has been a determination that a specific amount, a liquidated sum, is owed, and not where the assignment purports to transfer a claim for a disputed amount").[6]

---

[5] Moreover, *Giglio* is inapposite and arguably supports 51 Roses' position. In *Giglio*, the insured party assigned a claim under her uninsured motorist coverage without the consent of her insurance provider. *See* 2005 WL 1155148, at *1. The insured made this assignment after her car accident and after the tortfeasors' insurance company became insolvent several years after the accident. *Id.* at *7. The court held that because any rights that the insured had against her insurer accrued at the time that the tortfeasors' insurance provider became insolvent, the insured was at that point free to assign the insurance claim against her own insurance company without its consent. *Id.* But the insolvency of the tortfeasors' insurance company was not a condition precedent to the claim that she ultimately assigned. Rather, the insolvency was the very event, i.e. the risk insured against, that gave rise to the insurer's liability in the first instance. Here, the risk insured against was the fire.

[6] Relatedly, American Guarantee asserts that ¶¶ 6.22.01 and 6.22.02 of the Policy support a finding that Bridge33 could not have assigned a claim to replacement cost value because, read together, the two provisions serve as a

This matter fits squarely within the majority rule concerning post-loss assignments and is largely indistinguishable from the circumstances in *Conrad Brothers,* which the Court finds persuasive. Bridge33's entitlement to insurance proceeds following the loss of the Property was assignable despite the inclusion of an anti-assignment provision in the Policy. The parties do not dispute that the loss occurred before any attempted assignment. The fire occurred on September 14, 2020, before Bridge33 completed its sale to 51 Roses on September 30, 2020. The terms of the Sales Agreement included the assignment of the insurance proceeds, the details of which were spelled out in the Post-Closing Agreement. At the time of the assignment, therefore, the Policy's risk profile was no longer relevant[7] and all that remained to be transferred was a right to seek insurance proceeds. *See Globecon Group, LLC*, 434 F.3d at 171. Bridge33 could validly assign any and all of the proceeds from the Policy to 51 Roses. *See Edgewood Manor Apartment Homes LLC v. RSUI Indem. Co.*, 782 F. Supp. 2d 716, 737 (E.D. Wisc. 2011) ("[N]otwithstanding that the Property had not been repaired or replaced at the time of assignment, the insurer's liability and the extent of that liability were 'set' by the loss, but at the option of the insured.").[8]

---

limitation on its liability. Where, as quoted above, ¶ 6.22.01 discusses the basis of adjusting a claim, ¶ 6.22.02 sets a two-year limit for American Guarantee's exposure to paying replacement cost value. Therefore, American Guarantee asserts, these paragraphs preclude 51 Roses from receiving replacement cost value because Bridge33—the insured under the Policy—did not **begin** repairs within two years of the direct physical loss of the Property and so had no right to a claim for replacement cost value. The Court rejects this argument for the reasons outlined above.

[7] American Guarantee's assertion that its risk was not fixed at the time of loss because allowing the assignment of replacement cost value would increase American Guarantee's potential liability to between $650,000 and $3.3 million is therefore unpersuasive. American Guarantee's potential liability to the insured included those sums from the moment the Property burned and the loss occurred. Those cases in which assignments have been held invalid generally involve business interruption policies where the insured has sold a business and the new owner seeks lost profits of its own business. *See Bronx Ent., LLC v. St. Paul's Mercury Ins. Co.*, 265 F. Supp. 2d 359, 362–63 (S.D.N.Y. 2003) (holding that an anti-assignment provision barred the assignment of a claim for business interruption damages suffered by the assignee rather than by the insured); *Holt v. Fidelity Phoenix Fire Ins. Co.*, 273 A.D. 166, 168 (1948) (holding that an anti-assignment provision barred an attempt by a stranger to an insurance policy to collect lost profits arising out of a business that had not come into existence until eleven days after a fire).

[8] In *Conrad Brothers,* the court further observed that if the court "permitted an insurer to avoid its contractual obligations by prohibiting all post-loss assignments, we could be granting the insurer a windfall." 640 N.W.2d at 238. On the facts of this case, either side stands to receive a "windfall." The Court is aware that 51 Roses bought the Property for $1 million and has already received $1.3 million in insurance proceeds based on the actual cash value provisions of the Policy.

And as evidenced by ¶ 6.22, the Policy is clearly a replacement cost value policy and provides coverage for more than mere indemnity. *See Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 774–75 (7th Cir. 2013) (discussing replacement cost value policies and the reality that they are "specifically designed as more than a pure indemnity contract" and may leave the insured in a better position than they were in before the loss occurred). A loss having occurred, American Guarantee must meet the obligations of the Policy if 51 Roses satisfies its conditions.

**Conclusion**

For the reasons discussed above, 51 Roses' motion for summary judgment is GRANTED in part and only to the extent that it seeks a determination that the assignment from Bridge33 included the right to seek replacement cost value under the terms of the Policy. American Guarantee's motion for summary judgment is DENIED. These motions having been adjudicated, 51 Roses' motion for an expedited decision is moot.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of September 2022.

                                             */s/ Kari A. Dooley*
                                             KARI A. DOOLEY
                                             UNITED STATES DISTRICT JUDGE